IxWOODARD, Judge.
The plaintiff, Harold Brandenburg (Brandenburg), appeals the trial court’s judgment to uphold the State of Louisiana, Department of Health and Hospitals’ (DHH) denial of his *101 request for Medicaid assistance under the program’s spend-down medically needy provision. For the reasons assigned below, we affirm.
FACTS
The Medically Needy Program (MNP) provides Medicaid benefits to individuals or families “whose income and/or resources are sufficient to meet basic needs in a categorical assistance program but not sufficient to meet medical needs according to MNP standards.” DHH’s Medicaid Eligibility Manual § H-1010 (1992) (emphasis added). There are several classes of medically needy recipients. One group includes spend-down medically needy recipients, who “may qualify for the Medically Needy Program on the basis that countable income has been spent or [are] obligated to pay |2unpaid medical expenses.” DHH’s Medicaid Eligibility Manual § H-1011 (1996). Hence, the medical bills of these recipients are used to “spend-down” their excess income to an eligibility level known as the Medically Needy Income Eligibility Standard (MNIES). DHH’s Medicaid Eligibility Manual § H-1010.2 (1992).
Brandenburg, age sixty-eight now, initially applied for Medicaid assistance on January 8, 1996, but his social security income exceeded the maximum allowable limits for participation in the SSI-related Medicaid program. As a result, he was considered under the spend-down medically needy provision of Medicaid. After the appropriate calculations were made, Brandenburg had a negative remaining quarterly income. He was then certified for coverage from January 1, 1996 to March 31,1996, and the residual amount was carried over into his next certification period.
In March of 1996, Brandenburg reapplied for Medicaid assistance, but was, once again, only considered under the program’s spend-down medically needy provision for April, May, and June of 1996. However, the medical bills considered in the second quarter, along with the residual from the first spend-down, did not reduce Brandenburg’s income to the appropriate point of eligibility. He was then contacted and allowed to submit additional expenses, but in the end, his excess income was still not sufficiently consumed by his medical expenses.
Pursuant to Brandenburg’s request, a hearing was held before an administrative law judge on August 23, 1996. By written reasons dated April 29, 1997, the administrative law judge held that the evidence supported the rejection of Brandenburg’s application for participation in the SSI-related Medicaid program and the spend-down provision of the MNP.
On May 30, 1997, Brandenburg sought judicial review of that administrative decision. A certified copy of the administrative appeal record was then filed.into the record of the trial court’s proceedings on September 22, 1997. By judgment dated September 29, 1997, the trial court affirmed the administrative law judge’s ruling in favor of the DHH. Brandenburg devolutively appeals from that judgment.
ASSIGNMENT OF ERROR
Acting pro se, Brandenburg contends that his medical bills were of a sufficient amount to make him eligible for participation in the spend-down medically needy program. He also contends that he has “been abused by the State of Louisiana” andjjthat it “has.not obey[e]d the federal law....” Furthermore, he criticizes the job performances of his attorney, Nina Coleman, a DHH Eligibility Determinations Examiner, David Glancy, the Bureau of Appeals Director, Gerard Torry, and the administrative law judge.
LAW
The only issue properly before us is whether Brandenburg incurred medical expenses that are sufficient to effectively reduce his income to the eligibility level. Brandenburg alleged in his petition to the trial court that the administrative law judge’s decision violated La.R.S. 49:964(G), one of the provisions of the Administrative Procedure Act, which provides:
The court may affirm the decision of the agency or remand the ■ case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced be *102 cause the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
(7) In cases covered by R.S. 15:1171 through 1177, manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
|4Under the Administrative Procedure Act, a reviewing court is, for the most part, confined to the record established before the agency. La.R.S. 49:964(F).
In order to determine if there was any error in the decisions below, we must apply the Medicaid rules and regulations to the facts of this case. The DHH’s Medicaid Eligibility Manual § H-1011.2 (1995) provides:
If there is excess income remaining after the regular MNP budget, certain medical bills incurred by the income unit are used in chronological order (the order in which services are furnished) to reduce the income (spend-down). If the benefit unit has enough medical bills to reduce countable income below the MNIES (or reduce excess income to zero) in a three-month period and other eligibility factors are met, they are eligible for Medicaid coverage for the remainder of the spend-down quarter.
According to the quarterly income worksheet for spend-down MNP (OFS Form 2-SD), the eligibility determination is made by taking the “Total Countable Quarterly Income” of the applicant and subtracting the quarterly MNIES to come up with an “Excess Income to Spend-Down.” From that amount, “allowable quarterly medical expenses” are then subtracted, resulting in an amount known as “Remaining Quarterly Income.” If that final amount is equal to or less than zero, then the applicant is deemed “income eligible.”
FIRST QUARTER ELIGIBILITY
In considering Brandenburg’s eligibility for participation in the spend-down medically needy provision of Medicaid from January through March of 1996, the DHH made the following calculations:
1. $1,962 .00 Total Countable Quarterly Income
2. (276 .00) Quarterly MNIES for one person
3. $1,686 .00 Excess Income to Spend-Down
4. (1,879 .46) Allowable Quarterly Medical Expenses
5. ($193 .46) Remaining Quarterly Income
|5Our review of the record substantiates that the above calculations are correct. The amount listed in line one is computed by subtracting the $20.00 standard monthly SSI deduction from Brandenburg’s monthly social security benefit of $674.00. This yields a monthly countable income of $654.00. In order to obtain a quarterly income amount, we multiply $654.00 times three months, which results in $1,962.00.
The amount listed in line two is the corresponding quarterly MNIES amount for one individual in a rural area. DHH’s Medicaid Eligibility Manual, Z-300 Chart (1992). Subtracting $276.00 from $1,962.00 results in the $1,686.00 listed in line three.
We next considered the $1,879.46 in medical expenses, which include:
*103 1. Northgate/DBA Sabine MG 2-07-95 $163.60
2. Northgate/DBA Sabine MC 3-10-95 $122.00
3. Northgate/DBA Sabine MC 3-13-95 $164.00
4. Northgate/DBA Sabine MC 7-27-95 $716.00
5.LifeCare Emerg. Med. Serv. 7-27-95 $74.64
6. Family Med/Surg. Ctr. Prior to 9-95 $193.97
7. Dr. Gurleen Sikand 9-20-95 $217.00
8.Willis-Knighton MC' 12-03-95 $228.25
Subtracting Brandenburg’s $1,879.46 allowable quarterly medical expenses from his $1,686.00 excess income yields a negative quarterly income, as shown in line five. This qualified Brandenburg for participation in the spend-down medically needy program for the first quarter of 1996. The $193.46 remaining is to be carried over into his second quarterly budget.
Second Quarter Eligibility

DHH’s Initial Calculations

The DHH calculated Brandenburg’s second quarter eligibility, prior to the August 23, 1996 administrative hearing, as follows:
1. $1,962 .00 Total Countable Quarterly Income
2. (276 .00) Quarterly MNIES for one person
163. $1,686.00 Excess Income to Spend-Down
4. (738.77) Allowable Quarterly Medical Expenses
5. $947.23 Remaining Quarterly Income
These calculations are also correct. The $738.77 in medical expenses listed include:
1. Medical Center Pharmacy Prior to $198.02 12-28-95
2. Wal-Mart Pharmacy 2-02-96 thru 3-13-96 $34.50
3. Willis-Knighton MC 2-12^96 $6.98
4. Wal-Mart Pharmacy 4-09-96 thru 6-07-96 $216.91
5. LA Neurological Spec. 7-02-96 $21.62
6. Wal-Mart Pharmacy 7-05-96 $26.45
7. Wal-Mart Pharmacy 7-09-96 $27.88
8. Dr. John 4-21-95 $12.95
9.Residual from first budget $193.46
Subtracting the $738.77 in allowable quarterly medical expenses from Brandenburg’s $1,686.00 in excess income yields a remaining quarterly income of $947.23, as shown in line five. Since this amount is greater than zero, Brandenburg is ineligible for Medicaid benefits under the spend-down provision for the second quarter of 1996.
. DHH’s Revised Calculations
In reviewing the administrative law judge’s April 29, 1997 appeal decision, we noticed that it máde reference to the existence of a “revised budget” that was computed by the DHH on August 22, 1996 as a result of Brandenburg’s submission of additional medical bills after the hearing. This document is clearly listed on page seventeen of the record as exhibit seven [“Revised Spend-Down budget presented by Medicaid (dated 8/22/96).”] of that appeal decision. However, the DHH’s revised budget was \-fnot included in the record before us. Without that document, we could not tell which of Brandenburg’s new medical bills were considered by the DHH and could only speculate as to how the final calculations were made.
Our clerk’s office then contacted the clerk’s office below, and it was discovered that the trial court never received this document; in other words, the trial court’s copy of the administrative appeal record did not include the DHH’s revised budget. We then reasonably inferred that the trial court was not able to scrutinize the' final computations of the DHH in rendering its judgment. However, since the DHH has recently provided this court with a copy of that missing document, we find it unnecessary to rémand the case to the trial court. Therefore, pursuant to La.Code Civ.P. art. 2164, we shall determine for ourselves whether the denial of Medicaid benefits to Brandenburg was proper based on our review of the DHH’s final calculations in light of the other evidence in the record.
After considering the additional expenses Brandenburg submitted, The DHH recalculated Brandenburg’s budget as follows:
1. $1,962.00 Total Countable Quarterly Income
2. (276.00) Quarterly MNIES for one person
3. $1,686.00 Excess Income to Spend-Down
4. (696.41) Allowable Quarterly Medical Expenses
9.59 Remaining Quarterly Income

*104
Our Correction of DHH’s Revised Calculations

After reviewing the revised budget in light of the evidence in the record, we discovered that some of Brandenburg’s medical expenses were omitted in this recalculation; however, even after adding the omitted bills, we found that Brandenburg’s medical bills were still insufficient to reduce his income.
According to the administrative hearing judge, “The countable bills for the March application included new amounts submitted from Northgate Medical Center .. .¡the previously submitted bills, and the $193.46 residual remaining from the prior spend-down quarter_” (Emphasis added.) First, for some reason, Brandenburg’s May and June of 1996 bills from the Northgate Medical Center were never considered. The Nor-thgate Medical Center computer printout, dated August 8, 1996 and found onjspage seventy-two of the record, clearly substantiates that Brandenburg had unpaid balances for various services that were rendered:
10.Northgate/DBA Sabine MC 5-13-96 $75.89
11. Northgate/DBA Sabine MC (His 20% of $1,571.99 since Medicaid has not yet paid) 5-16-96 $314.40
12. Northgate/DBA Sabine MC 6-14-96 $42.80
13. Northgate/DBA Sabine MC 6-19-96 $174.60
Second, in listing the previously submitted bills, the DHH omitted two additional bills— the $34.50 in bills incurred from Wal-Mart Pharmacy between February 2, 1996 and March 12, 1996, and the $6.98 bill incurred from Willis Knighton MC on February 12, 1996.
In light of the above errors, we recalculated Brandenburg’s budget for the second quarter of 1996 by taking the DHH’s allowable quarterly medical expense amount of $696.41 and adding on the expenses that were omitted ($34.50 + $6.98 + $75.89 + $314.40 + $42.80 + $174.60). These new amounts increase Brandenburg’s medical expenses to $1,345.58. Nevertheless, when this amount is subtracted from his $1,686.00 in excess income, $340.42 still remains. Thus, after considering Brandenburg’s income in light of his deductions, the MNIES, and all of his medical expenses, we find no error in the trial court’s or the administrative law judge’s decision that he is ineligible for assistance under the spend-down medically needy provision of Medicaid for the second quarter of 1996.
In presenting his version of the calculations, Brandenburg mistakenly reused the medical expenses from his first certification period for eligibility consideration in the second period. The DHH’s January 31, 1996 notice to Brandenburg not only informed him of his approved coverage from January 1, '1996 to March 31, 1996, but also clearly stated that if he later wished to “qualify for additional Spend-Down coverage[,]” he would have to submit “ADDITIONAL medical expenses.... The medical expenses owed CANNOT be the same as those previously used to qualify [him] for Spend-Down coverage.”
| (¡CONCLUSION
Based on the above reasons, the trial court’s decision, denying Medicaid benefits to Brandenburg and affirming the administrative law judge’s decision for same, is affirmed. Costs of this appeal are east to Brandenburg.
AFFIRMED.